IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**EARNEST BOLTON, SR., et al.,**                    Case No. 3:16 CV 220

    Plaintiffs,

    v.                                                            Magistrate Judge James R. Knepp, II

**STATE FARM FIRE & CASUALTY CO.,**

    Defendant.                                               MEMORANDUM OPINION AND ORDER


## INTRODUCTION

On December 28, 2015, Plaintiffs Earnest and Georgia Bolton ("Plaintiffs") filed a complaint against Defendant State Farm Fire & Casualty Company ("Defendant") in the Lucas County, Ohio Court of Common Pleas. (Doc. 1-1, at 7-14). The complaint asserts breach of contract, bad faith, and unfair trade practices. *Id.* On January 26, 2016, Defendant removed the case to this Court. (Doc. 1). Jurisdiction is proper under 28 U.S.C. § 1332. The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 15). The case is before the Court on Defendant's Motion for Summary Judgment (Doc. 24), to which Plaintiffs responded (Docs. 27 & 28), and Defendant replied (Doc. 29). For the reasons stated below, Defendant's motion is granted and the case is dismissed with prejudice.

## BACKGROUND

This case arises out of a residential fire on January 1, 2015. Plaintiffs owned the residence—a duplex located at 362 Boston Place, Toledo, Ohio 43610 ("the property")—and Defendant supplied an insurance policy. Plaintiffs had owned the property outright since 2008

when they completed the terms of a Land Contract. (Earnest Bolton Affidavit, Doc. 27-1, at 1) (hereinafter "Bolton Aff.").

<u>The Fire</u>

In the early morning hours of January 1, 2015, the property caught fire. (Bolton Aff., Doc. 27-1, at 1).

At the time of the fire, the property was leased to Monique Davis and Roy Armstrong, both relatives of Plaintiffs. (Bolton Aff., Doc. 27-1, at 1). On the evening prior to the fire (December 31, 2014—New Years' Eve), Plaintiffs hosted a party for family and friends at their home in Maumee on Welsford Court. *Id.* Davis and Armstrong, as well as their children, planned prior to the party to stay overnight at Plaintiffs' home in Maumee. *Id.* This was because alcohol would be consumed at the party, and family members anticipated staying up late to ring in the New Year. *Id.*

Plaintiffs were awakened during the early morning hours of January 1, 2015 and informed the property had caught fire. *Id.* Following the fire, Plaintiffs made a claim under their insurance policy with Defendant. *Id.* at 1-2.; Lonnie Johnson Declaration, Doc. 24-2, at 2 (hereinafter "Johnson Declar.").

<u>The Policy</u>

State Farm issued Rental Dwelling Policy 95-BL-W652-6 to Plaintiffs, insuring the property located at 362 Boston Place, Toledo, Ohio 43610. (Johnson Declar., Doc. 24-2, at 1); (Policy, Doc. 24-3). This Policy had been in place since approximately 1998. (Bolton Aff., Doc. 27-1, at 1). The Policy provided conditions, including, *inter alia*:

> **2.** **Your Duties After Loss.** In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

a.    give immediate notice to us or our agent, and in case of theft, vandalism, or malicious mischief, also to the police;

b.    protect the property from further damage or loss, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures;

c.    prepare an inventory of damaged personal property showing in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills receipts and related documents that substantiate the figures in the inventory;

d.    as often as we reasonably require:

    (1)    exhibit the damaged property;

    (2)    provide us with records and documents we request and permit us to make copies; and

    (3)    submit to examinations under oath and subscribe the same;

e.    submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    (1)    the time and cause of loss;

    (2)    interest of the insured and all others in the property involved and all encumbrances on the property;

    (3)    other insurance which may cover the loss;

    (4)    changes in title or occupancy of the property during the term of this policy;

    (5)    specifications of any damaged building and detailed estimates for repair of the damage;

    (6)    an inventory of damaged personal property described in 2.c.;

    (7)    records supporting the fair rental value loss.

(Policy, Doc. 24-3, at 7). The Policy also provided additional duties, including:

**3.    Duties After Loss.** In case of an accident or occurrence, the insured shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

a.    give written notice to our agent as soon as practicable, which sets
          forth:

                                    ***

          (3) names and addresses of any claimants and available witnesses;

                                    ***

    c.    at our request, assist in:

                                    ***

          (4) securing and giving evidence and obtaining the attendance of
          witnesses.

(Policy, Doc. 24-3, at 10). Moreover, the Policy provided that the insured must "comply with the

provisions of this policy" (Policy, Doc. 24-3, at 4), and that "[n]o action shall be brought unless

there has been compliance with the policy provisions" (Policy, Doc. 24-3, at 7). Finally, the Policy

provided certain exclusions, including that Defendant would not cover loss due to intentional acts

by the insured. (Policy, Doc. 24-3, at 8) ("If you or any person insured under this policy causes or

procures a loss to property covered under this policy for the purpose of obtaining insurance

benefits, then this policy is void and we will not pay you or any other insured for this loss.").

Defendant's Investigation

        First, Plaintiff avers he and his wife never "willfully refuse[d] to cooperate . . . or in any

way attempt[ed] to hinder or obstruct" Defendant's investigation of the fire. (Doc. 27-1, at 3).

        Upon receiving Plaintiff's claim, Defendant began an investigation. (Johnson Declar., Doc.

24-2, at 2). Defendant retained Tom Bensen, an Origin and Cause expert. *Id.* Through Bensen's

investigation, Defendant discovered an accelerant (gasoline) was used to start the fire, and

therefore determined the cause of the fire to be arson. *Id.* at 3. Defendant's investigation also

revealed that, in its belief, Plaintiffs had some financial issues which may have been motive for

causing the fire. *Id.* Defendant noted: 1) Plaintiffs had previously filed for bankruptcy; 2) the residence occupied by Plaintiffs at the time of the fire was in foreclosure; and 3) property taxes on the Property were delinquent at the time of the fire. *Id.*

Plaintiff Earnest Bolton explains that while Plaintiffs resided at the Welsford Court residence at the time of the fire, that residence "had been surrendered through the Bankruptcy proceeding." (Doc. 27-1, at 3). Additionally, Plaintiffs' bankruptcy discharge effective May 14, 2014 granted them a discharge on all debts. (Bolton Aff., Doc. 27-1, at 3). At the time of the fire, Plaintiff had "very little debt from any source", and "minimal other debt" but did owe "the approximate amount of less than $6,000" in real estate taxes on the Property. (Doc. 27-1, at 3).

Due to the results of its initial investigation, Defendant then deployed its Special Investigative Unit ("SIU"). *Id.* That unit determined that several "indicators of potential fraud were present, including prior bankruptcies, an incendiary fire, the timing and nature of the Fire, and current financial problems." *Id.* At that point, Lonnie Johnson, a Claim Representative with the SIU became involved. *Id.* at 2-3.

Defendant then sent the first in a series of letters to Plaintiffs at Johnson's direction. *Id.* at 3. The January 8, 2015 letter contained a reservation of rights and informed Plaintiffs that Defendant had questions about the nature of the fire and whether certain provisions of the policy had been violated. (Doc. 24-4). That same day Defendant sent Plaintiffs a letter requesting that they comply with the "Duties After Loss" provisions of the Policy. (Doc. 24-5). Upon receipt of a

notice of representation from Plaintiffs' counsel, Defendant sent a reservation of rights letter to counsel on January 21, 2015. (Doc. 24-6); (Johnson Declar., Doc. 24-2, at 4).

On February 5, 2015, Defendant sent a letter to Plaintiffs' counsel reiterating questions of coverage, and attempting to schedule a date and time for Earnest Bolton's recorded statement. (Doc. 24-7).

On March 3, 2015, Johnson took Earnest Bolton's recorded statement. (Doc. 24-8).

On March 5, 2015, Defendant sent a letter to Plaintiffs' counsel stating Defendant was "continuing its investigation" and had been "unable to resolve these questions of coverage." (Doc. 24-9, at 2). The letter also noted "There is a question whether there has been a breach of policy condition 'Your Duties After Loss.'" *Id.* The letter informed Plaintiffs that Defendant had retained Attorney Michael Manahan "for the purpose of obtaining Mr. and Mrs. Bolton's Examination Under Oath" pursuant to the policy. *Id.* at 2-3. The letter stated: "You should be aware that your failure to comply with these policy duties could be considered a breach of the terms and conditions of the policy contract and could result in the denial of any policy benefits that may otherwise be payable." *Id.* at 3. On March 6, 2015, Johnson called Plaintiffs' counsel to explain the March 5 letter. (Johnson Declar., Doc. 24-2, at 5).

On March 27, 2015, Manahan sent a letter to Plaintiffs, through counsel, confirming the dates and times for the Examinations Under Oath. (Doc. 24-10, at 1). Defendant also requested Plaintiffs "produce the tenants of 362 Boston Place, Monique Davis, Roy C. Armstrong, Jr., and Earnest Bolton, Jr., for examination under oath." *Id.* The letter also listed specific documentation Plaintiffs were requested to bring to the Examinations, including, *inter alia*: (1) phone call/text records from landline or cellular telephones from December 29, 2014 though January 5, 2015; (2) contact information for "any and all persons that can confirm your whereabouts on the date of loss,

including their current address and phone number"; (3) copies of local, state, and federal personal income tax returns for 2011-2013; (4) copies of monthly bank statements from 2012 to present; (5) any records kept on behalf of any business in which Plaintiffs are owners or part owners from 2012 to present; and (6) all bankruptcy pleadings for the past five years. (Doc. 24-10, at 5-7). Finally, the letter noted: "These requests are conditions of your policy of insurance. You should be aware that your refusal to cooperate in the production of documents, answering of questions under oath, etc., will be considered a breach of the terms and conditions of the contract of insurance and will result in the denial of any policy benefits that may be available." *Id.* at 7.[1]

On April 22, 2015, Defendant conducted both Plaintiffs' Examinations Under Oath. *See* Docs. 24-11 & 24-12; Bolton Aff., Doc. 27-1, at 2.

On May 8, 2015, Manahan wrote Plaintiff's counsel reiterating Defendant's request for document production, and noting "[w]hile State Farm thanks your clients for the documentation that they have produced to date, additional documentation that State Farm demanded is still outstanding." (Doc. 24-14, at 2). The letter listed specific documentation requested, including: (1) copies of call/text detail for cell phones in Plaintiffs' names for December 31, 2014 through January 2, 2015; (2) "[a]ny and all records relating to the formation of the Bolton Adult Family Home", including financial records; (3) copies of utility bills from January 2014 through January 2015 for 6126 Wellsford [sic] Court, 362 Boston Place, and 1416 North Cove; (4) call detail from a landline phone number for December 31, 2014 and January 1, 2015; and (5) copies of federal, state, and local income tax returns for 2013 and 2014. *Id.* at 2-4. The letter again stated failure to

---

1. The letter also noted Defendant's "ability to properly and thoroughly investigate your claims may already have been, or in the future may be, compromised by your untimely submission of the requested documents, information, etc., and appearance at an examination under oath. These factors may be considered as a breach of your duties under the policy of insurance and potentially cause a forfeiture of any rights you may otherwise possess under the policy". (Doc. 24-10, at 8).

produce documentation might result in denial of the claim based on a breach of the cooperation agreement. *Id.* at 4-5.

Manahan sent a second letter on behalf of Defendant on June 5, 2015, reasserting the document requests in the May 8, 2015 letter and extending the deadline for production to June 19, 2015. (Doc. 24-15). The letter contained similar language noting failure to comply could result in a denial of the claim for failure to cooperate. *Id.* at 5.

Johnson avers Plaintiffs "did not produce any documents or information in response to these requests." (Johnson Declar., Doc. 24-2, at 6).

During Plaintiffs' examinations, Johnson learned Georgia Bolton left the New Years' Eve party at approximately 1:00 a.m. on January 1, 2015 to drive home Earnest Bolton, Jr.'s girlfriend Janai Lewis. (Johnson Declar., Doc. 24-2, at 5). Johnson attempted to contact Ms. Lewis by phone to verify Georgia Bolton's statement about her whereabouts. *Id.* at 5-6. On June 17, 2015, Defendant sent Plaintiffs' counsel a letter requesting correct contact information for Earnest Bolton, Jr.'s girlfriend. (Doc. 24-13). It noted the previous number provided was a non-working number. *Id.*

Plaintiff claims to have  provided the address and phone number for Janai Lewis to counsel for Defendant "on several occasions, both prior to the claim being denied and then after the denial of the claim and the filing of this lawsuit." (Doc. 27-1, at 2).

On June 24, 2015, Examinations Under Oath of Davis and Armstrong were conducted, after Plaintiffs made arrangements to have them available. (Bolton Aff., Doc. 27-1, at 2); *see also* Doc. 24-16 (letter acknowledging this).

On July 10, 2015, Manahan sent another letter to Plaintiffs' counsel, summarizing earlier requests and noting he had not received the requested documents. (Doc. 24-16, at 3-4). Defendant

demanded Plaintiffs produce the documentation previously requested by July 24, 2015. *Id*. at 4. Defendant again noted that failure to do so might result in a denial. *Id.*

Johnson avers Plaintiffs did not produce any documentation in response to the July 10 letter. (Johnson Declar., Doc. 24-2, at 6).

On August 12, 2015, Manahan sent Plaintiffs' counsel a follow up letter detailing prior correspondence and the documentation which had been requested, but not received. (Doc. 24-17). Defendant noted it would provide Plaintiffs "with a final opportunity" to produce the requested documentation by August 26, 2015. *Id.* at 5-6. The letter also reiterated the request for Janai Lewis' contact information. *Id.* at 3.

Sometime between August 13 and 17, 2015, Plaintiffs' counsel provided several documents to Defendant through Manahan. *See* Doc. 27-2 (letter from Plaintiff's counsel); (E. Bolton Affidavit, Doc. 27-1, at 2). The documents provided were:

1. A letter from Monique Davis regarding her whereabouts on December 31, 2014. (Doc. 28, at 2).

2. Three lease agreements for the property: two dated November 1, 2003, and one dated January 1, 2014. *Id.* at 3-8.

3. Assessment information for the Property. *Id.* at 10.

4. Sprint text message records for four mobile phone numbers for December 31, 2014 through January 2, 2015. *Id.* at 11-18.

5. A 2013 federal 1099MISC for Earnest Bolton from Fund I Independent Foreclosure Payment QSF. *Id.*at 19.

6. 2011 and 2012 Federal tax return summaries for Plaintiffs. *Id.* at 20-21.

7. A 2014 1099MISC for Georgia Bolton from Aetna Life Insurance Company. *Id.* at 22.

8. AETNA health benefits statements for Georgia Bolton dated December 2014 through February 2015. *Id.* at 23-32.

9. A 2013 1099MISC for Bolton's Adult Family Home from Unison Behavioral Health Group. *Id.* at 33.

10. A 2013 W2 for Georgia Bolton from Stout Senior Care. *Id.* at 34.

11. An October 2014 State Street Retiree Services statement for Earnest Bolton. *Id.* at 35.

12. A 2013 W2 from State Street Retiree Services for Earnest Bolton. *Id.* at 36.

13. A 2013 State of Ohio Department of Taxation statement of state or local income tax refund for the year 2011. *Id.* at 37.

14. A 2013 W2 for Georgia Bolton from Interim Healthcare of Northwestern Ohio, Inc. *Id.* at 38.

15. A 2014 W2 for Georgia Bolton from Stout Senior Care. *Id.*

16. Jeep Country Federal Credit Union statements for an account ending in 025 for January, February, June, and December 2014. (Doc. 28-1, at 1-11)

17. Jeep Country Federal Credit Union statements for an account ending in 830 for January, February, and June 2014. *Id.* at 12-14.

18. A Firelands Regional Medical Center payment to Earnest Bolton dated February 20, 2015. *Id.* at 15.

19. Documents related to the Bolton Adult Family Home including: 1) a payment for one resident dated June 24. 2015; 2) a payment ("rent supplement") for another resident dated March 16, 2012; 3) a quarterly report to Ohio mental Health and Addiction Services listing four residents; 4) a license to operate an adult care facility; 5) a ledger for November 2013 showing one resident's charge. (Doc. 28-1, at 16-19).

20. A Land Installment Contract for the Property dated October 2003. *Id.* at 20-26.

21. A February 2015 Wells Fargo statement showing a loan balance of $26,378. *Id.* at 27.

22. Documents from Plaintiff's Bankruptcy (December 2013 voluntary petition and May 2014 discharge). *Id.* at 28-76; Doc. 28-2, at 1-11.

23. AT&T U-Verse bills including charges for television, internet and voice services for March, September, October, and December 2014. (Doc. 28-2, at 12-15).

24. Sprint bills for four phone numbers for September and October 2014. *Id.* at 16-17.

25. Utility statements (Toledo Edison, Toledo Department of Public Utilities, and Columbia Gas). *Id.* at 18-52.

26. Capital One Platinum Mastercard statements for Georgia Bolton for January 23-February 22, 2015 and November 23-December 22, 2014. *Id.* at 53-54.

27. Earnest Bolton's March 3, 2015 statement taken by Johnson. *Id.*, at 27-76; Doc. 28-4, at 1-10.

28. Sprint call detail reports for four mobile phone numbers from December 30, 2014 through January 3, 2015. *Id.* at 19-32; Doc. 28-5, at 1-19.[2]

29. Two handwritten rent receipts from Earnest Bolton; one a previous tenant dated January 2013 and one to Armstrong dated August 2013. (Doc. 28-5, at 20.

30. Toledo Fire & Rescue Department Director's Report of its response to the fire. *Id.* at 21-37.

31. Assessment information for the Property. *Id.* at 38-40.

32. An undated, unsigned inventory of lost items. *Id.* at 41.

*See generally* Doc. 28 ("Supplemental Exhibits"), 28-1, 28-2, 28-3, 28-4, and 28-5 (collectively "Exhibits B and C" to Plaintiffs' opposition to summary judgment); *see also* Bolton Aff., Doc. 27-1, at 2 ("That the documents which were made available per State Farm requests, Exhibits B and C attached the Reply to Motion for Summary Judgment . . . were presented to Attorney Manahan, the Counsel who was conducting the examination for State Farm on or about August 17, 2015); *Id.* ("That a copy of the list of the documents that were presented is attached hereto"); *Id.* at 3 ("That I have reviewed Exhibits B and C attached to the Reply to Motion for Summary Judgment . . . and confirm that those are a majority of the documents which I made available to State Farm .

---

2. Although these records are included in Plaintiffs' Exhibits B and C, the contents of which Earnest Bolton alleges were provided to Defendant in August 2013, they are attached to a letter dated February 15, 2016 from Sprint to Plaintiffs' attorney. *See* Doc. 28-4, at 19. Regardless, these documents were all provided to Defendant.

. . in conjunction with, and in cooperation for, the fire loss claim regarding 362 Boston Place."); *Id.* at 3 (these documents "were subsequently supplemented by me in the [instant case]"); *Id.*, at 5 (index of documents provided). Additionally, Plaintiff avers that "requests have been made for records concerning the Bolton Group Home" and that he has "presented a series of documents through my Counsel to the attorney for State Farm which included requested financial information." *Id.*at 2.

On August 19, 2015, Manahan wrote Plaintiffs' counsel thanking them for their partial response to Defendant's request. (Doc. 24-18). The letter noted that "[w]hile all of the documents that State Farm initially demanded" in its previous letters were important, there were "a number of critical documents that State Farm has demanded that have not yet been produced by your clients". *Id.* at 2. The letter then listed the documents which had not been provided, or which incomplete responses to requests had been provided. *Id.* at 3-4; 6-10 (paralegal's summary chart of documents requested, received, and still needed). The letter specifically explained why certain documentation was necessary, including:

> In regard to the Boltons' Adult Family home business enterprise, the documents that your clients provided are inadequate, in every respect. I am unable to evaluate the financial viability of this enterprise. Three documents evidencing payment by certain individuals . . . are insufficient to determine the amount of total income received by your clients on an annual basis, or even on [a] monthly basis. There is no detail as the expenses involved in operating this enterprise. Again, it is difficult for me to believe that your client does not have to submit information to the state of Ohio for this program, however, if I am in error, it would still be necessary to document whether the expenses of operating this enterprise exceed the amount of income received from the state of Ohio. Again, please contact me to provide an explanation.

*Id.* at 3-4. The letter reiterated the August 26, 2015 deadline for production for all requested documentation. *Id.* at 5.

Johnson avers Plaintiffs "failed to produce any documents in response to Manahan's August 19, 2015 letter". (Johnson Declar., Doc. 24-2, at 7). On August 28, 2015, Manahan sent another letter to Plaintiffs' counsel, stating he had not received a response. (Doc. 24-19). Additionally, Manahan noted he was "prepared to recommend to State Farm that your clients have breached their duty to cooperate in the investigation of the loss". *Id.* He requested Plaintiffs' counsel contact him, confirm that Plaintiffs were "aware of the fact that their claim may be in jeopardy due to their breach of the policy conditions, and that they still refuse to provide the documentation that State Farm has demanded." *Id.* at 3.

On September 9, 2015, Plaintiffs' counsel sent Manahan a letter stating, in its entirety:

I appreciate our recent conversation. I have talked further with my clients and will be providing you with additional documentation and information. I regret that it has taken some period of time however, some of these items are difficult to track down.

I will be in contact with you in the near future in this regard.

(Doc. 24-20, at 2).

On September 24, 2015, Manahan responded, noting that although Defendant was able to obtain utility information with a signed release from Plaintiffs, it was unable to obtain the remaining requests in the July 10, 2015 letter. (Doc. 24-21). Thus, Defendant again extended the deadline for Plaintiffs to produce "the records and documents that State Farm demanded in my July 10, 2015 correspondence" to October 9, 2015. *Id.* at 3. The letter warned that failure to comply would result in Manahan recommending Plaintiffs "have failed to cooperate in producing records and documents that State Farm has reasonably demanded". *Id.*

On October 22, 2015, Johnson, on behalf of Defendant, sent Plaintiffs' counsel a letter. (Doc. 24-22). It listed all previous correspondence, as well as Defendant's concerns regarding the fire, and Plaintiffs' failure to provide certain records including phone call details, records for the

group home, contact information for Earnest Bolton Jr.'s girlfriend, and a sworn statement of proof of loss and personal property inventory form. *Id.* at 2-3. The letter provided a new deadline of November 6, 2015 to produce the requested records. *Id.* at 4. The letter requested Plaintiffs' counsel contact Johnson or Manahan "[i]f there is a reason that precludes or prohibits your clients compliance, that is not a willful or intentional reason". *Id.* at 4. The letter warned that failure to comply would lead Defendant to "make a claim based on the information we have, including willful non-compliance, which could jeopardize coverage which might otherwise apply." *Id.*

On November 3, 2015, Johnson again wrote to Plaintiffs' counsel. (Doc. 24-23). He acknowledged receipt of Plaintiffs' notarized "Sworn Statement in Proof of Loss" and "Personal Property Inventory" forms. *Id.* at 2. However, he noted the forms were not completed in their entirety, pointing out specific deficiencies. *Id.* He reiterated Defendant's concerns, and the documentation Defendant had requested and Plaintiffs had still not provided. *Id.* at 3. Specifically, the letter requested "cellular and landline call detail records as requested", "business financial records for Mr. Bolton's group home", and the "name, address, and working telephone number of Earnest Bolton Junior's girlfriend." *Id.* The letter then extended the deadline for providing the information to November 13, 2015. *Id.* at 4.

Johnson avers he received no response to his November 3, 2015 letter. (Johnson Declar., Doc. 24-2, at 9). On December 1, 2015, Johnson mailed a letter, on behalf of Defendant, denying coverage for Plaintiffs' claims. (Doc. 24-24). The letter explained the reasons for the denial:

> State Farm, through its counsel, requested that your clients' produce records and documents in support of your clients' claim of loss, in support of your clients' financial condition at the time of the loss, and documentation evidencing your clients' whereabouts and contacts during the evening hours of December 31, 2014, and the early morning hours of January 1, 2015. State Farm also requested that your clients' provide them with names and addresses of available witnesses. These requests were made by way of correspondence dated: March 27, 2015; May 8, 2015; June 5, 2015; June 10, 2015; June 12, 2015; August 12, 2015; as well as a

telephone conversation with State Farm's counsel on October 13, 2015, and correspondence from State Farm claim specialist Lonnie Johnson dated November 3, 2015.

Your clients' [sic] have failed to comply with State Farm's requests for records, documents and information, in failing to provide the following: the cellular telephone call detail for the Bolton's' [sic] cellular telephone "Family Plan" for the dates of December 31, 2014; January 1, 2015; and January 2, 2015; their 2013 and 2014 federal, state, and local income tax returns; the bank records for the two (2) accounts that the insured's have at the Jeep Federal Credit Union; the account at the Huntington National Bank; the financial records for the Bolton Adult Family Home; the call detail for their home phone; and the failure to provide the contact information for Earnest Bolton Jr.'s girlfriend, "Janai".

As you were previously advised, this information, along with your clients' examinations under oath are material to State Farm's evaluation of your clients' claim of loss. As a result of your clients' failure to produce the records, documents, and information as set forth above, State Farm cannot fully investigate your claim of loss and make a coverage decision regardig your clients' loss.

*Id.* at 3-4.

As of August 30, 2017, Plaintiffs' personal income tax returns for tax years 2014-2016 have not been completed. (Bolton Aff., Doc. 27-1, at 3). Similarly, as of that date, Plaintiffs have not had tax returns prepared for the Bolton Group Home for tax years 2013-2015. *Id.* at 2.

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden

of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. Further, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting that the court "need consider only the cited materials").

<h2 style="text-align:center">DISCUSSION</h2>

Defendant argues it is entitled to summary judgment because: 1) Plaintiffs breached the cooperation conditions in the policy, and therefore are not entitled to coverage under the policy; 2) Plaintiffs have failed to show bad faith; and 3) Ohio insurance statutes provide no private right of action. (Doc. 24). Plaintiffs respond: 1) there is a question of material fact as to whether they breached the cooperation conditions; 2) they have shown bad faith; and 3) Ohio's insurance statutes are "helpful and appropriate in determining how an insurance company is expected to conduct business within the State of Ohio." (Doc. 27). For the reasons discussed below, the undersigned concluded Defendant is entitled to summary judgment on all of Plaintiffs' claims.

<u>Cooperation Agreement</u>

Defendant argues it is entitled to summary judgment on Plaintiffs' coverage claim because Plaintiffs breached the cooperation agreement in their policy. Plaintiffs contend the issue of compliance with the cooperation agreement is a question of fact for a jury to determine. The central issue is whether Plaintiffs' admittedly-incomplete compliance with Defendant's requests is sufficient to survive summary judgment. For the reasons discussed below, the Court finds there is no genuine issue of material fact regarding Plaintiffs' compliance with the cooperation clause, and Defendant is thus entitled to summary judgment on Plaintiffs' breach of contract claim.

Plaintiffs' complaint alleges a breach of contract by State Farm in its failure to compensate Plaintiffs for their losses due to the January 1, 2015 fire. (Doc. 1-1, at 9-10). The Policy at issue contained clauses requiring Plaintiffs' cooperation, including "as often as we reasonably require . . . provide us with records and documents we request and permit us to make copies". (Policy, Doc. 24-3, at 7). Under Ohio law[3], "[w]hen a contract of insurance includes a cooperation clause, an insured's cooperation in defending an action brought against him is a material condition of the insurance policy and a condition precedent to the insurer's duty to provide liability coverage." *Weller v. Farris*, 125 Ohio App. 3d 270, 274 (1998); *see also Gabor v. State Farm Mut. Auto. Ins. Co.*, 66 Ohio App. 3d 141, 143-44 (1990). "When an insurance company demands information, the policyholder is 'required to make a fair and frank disclosure of information demanded by the company.'" *Gabor*, 66 Ohio App. 3d at 144 (quoting *Luntz v. Stern*, 135 Ohio St. 225, 231 (1939)). When a party "partially complie[s] with the cooperation clause, [a court] focus[es] on whether [that party's] failure to provide all the requested documentation constitute[s] a 'material and substantial' failure to cooperate." *Templin v. Grange Mut. Cas. Co.*, 81 Ohio App. 3d 572, 576-77 (1992). "To avoid a breach the insured must substantially disclose information reasonably demanded by the insurer. Mere nominal, trifling or technical departures from the substantial performance rule is not a breach of the cooperation clause." *Citizens Gas Devel. Co. v. Buckeye Union Ins. Co.*, 1986 WL 8180, *4 (Ohio Ct. App.) (internal citations omitted).

"[T]o constitute a defense to liability, an insured's lack of cooperation must result in material and substantial prejudice to the insurance company." *Gabor*, 66 Ohio App. 3d at 144

3. Because the policy was issued in Ohio to an Ohio resident, its interpretation is governed by Ohio law. *See Bank of N.Y. v. Janowick*, 470 F.3d 264, 271 (6th Cir. 2006). The parties do not dispute that Ohio law applies. And, under Ohio law, an insurance policy is a contract, the interpretation of which is a matter of law. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 241 (1978).

(citing *State Farm Mut. Auto. Ins. Co. v. Holcomb*, 9 Ohio App. 3d 79 (1983)). "Whether the insured breached the cooperation clause is generally determined 'in view of the facts and circumstances in each case'; however, the issue may be determined by the court as a matter of law 'when a case presents undisputed facts.'" *Weller*, 125 Ohio App. 3d at 275 (quoting *Gabor*, 66 Ohio App. 3d at 144).

Here, it is undisputed that Defendant's investigation caused it to determine the fire to be caused by arson, prompting Defendant to investigate Plaintiffs' alibis and finances in order to determine whether they had a motive or opportunity to start the fire. Early in the investigation, Defendant also had information indicating Plaintiffs had some financial difficulties (a past bankruptcy, back due taxes), presenting a potential motive for arson. In light of these circumstances, Defendant's efforts to investigate the situation, including Plaintiffs' finances, were warranted and reasonable. *See Gabor*, 66 Ohio App. 3d at 145 ("[W]hen an insurer's investigation indicates that arson is a possible cause of fire damage, the policyholder's failure to provide the insurer with pertinent financial information may void a policy for breach of the cooperation clause.").

Plaintiffs do not dispute they failed to produce: 1) call detail records for landline telephones; 2) a Capital One credit card statement for the month in which the fire occurred; 3) complete bank account records for all accounts; and 4) complete financial records for the Bolton Adult Family Home. (Doc. 29, at 2).[4] Other than Earnest Bolton's general statement that neither

---

4. Defendant also contends Plaintiffs have not provided contact information for Janai Lewis, noting that "[a]lthough Mr. Bolton says he provided Janai Lewis' contact information to State Farm, Plaintiffs have not cited or produced any evidence supporting that claim." (Doc. 29, at 5). However, Plaintiff Earnest Bolton avers he "did provide her address and phone number to Counsel for State Farm on several occasions, both prior to the claim being denied and then after the denial of the claim and the filing of this lawsuit." (Doc. 27-1, at 2). For the purposes of summary judgment, the undersigned must draw all inferences from the record in the light most favorable to

he nor his wife "willfully refused to cooperate" or "in any way attempt to hinder or obstruct" Defendant's investigation (Doc. 27-1, at 3), Plaintiffs provide no evidence that these records were provided. *See Gaston v. Allstate Ins. Co.*, 2008 WL 5716525, at *4 (N.D. Ohio) (finding Plaintiff's statement that he "was willing and able to cooperate with the investigation of the insurance claim" to be "beside the point" when "[t]he plain language of the policy required Plaintiff actually to cooperate, not merely to have a willingness to do so."). Plaintiffs similarly do not dispute that the information requested was unreasonable or outside the scope of the investigation.

Although Plaintiffs did provide Defendant with some information (*see* Docs. 28, 28-1, 28-2, 28-3, 28-4, 28-5), they did not provide the documents outlined above (landline telephone call detail, monthly bank statements, monthly credit card statements, and complete financial information relating to the Bolton Adult Family Home), despite numerous repeated requests, accompanied by warnings that failure to do so would result in a denial of the claim for breach of the cooperation agreement. These requests included:

- March 27, 2015 letter requesting Plaintiffs produce, *inter alia*, landline call detail records, credit card records from 2012 to present, copies of monthly bank statements from 2012 to present, and any records kept on behalf of any business in which Plaintiffs are owners or part owners. (Doc. 24-10)

- May 8, 2015 letter "reiterating their request for documentation as set forth in [the] initial correspondence to your clients dated March 27, 2015" noting Defendant still had not received, *inter alia*, landline phone records, records relating to the Bolton Adult Family Home, copies of monthly bank statements from the Jeep Federal Credit Union for the checking, savings, and business accounts, and all financial records relating to the Bolton Adult Family Home. (Doc. 24-14)

- June 5, 2015 letter reiterating requests from May 8, 2015 letter (Doc. 24-15)

---

the nonmoving party. *Matsushita Elec.*, 475 U.S. at 587. Thus the undersigned presumes for purposes of this motion that Lewis's contact information was provided.

- July 10, 2015 letter reiterating Defendant had not received the requested documentation (Doc. 24-16)

- August 12, 2015 letter reiterating the requests from the July 10, 2015 letter. (Doc. 24-17)

- August 19, 2015 letter acknowledging receipt of some documentation, but noting still absent were: monthly bank statements from Jeep Federal Credit Union, Capital One monthly, full financial information for the Bolton Adult Family Home; attached to this letter is a spreadsheet noting the call detail from the landline still had not been provided. (Doc. 24-18).

- August 25, 2015 letter indicating Defendant received no response to their August 19 letter and noting "I am prepared to recommend to State Farm that your clients have breached their duty to cooperate in the investigation of the loss[.]" (Doc. 24-19).

- September 24, 2015 letter explaining that Defendant had obtained utility bills, but other requests from July 10, 2015 letter were still outstanding. (Doc. 24-21).

- October 22, 2015 letter listing prior correspondence and specifically stating Plaintiffs had not yet provided, inter alia business financial records for the group home, and landline call detail. (Doc. 24-22).

- November 23, 2015 letter listing prior correspondence and reiterating lack of receipt of landline call detail records and business financial records for the group home. (Doc. 24-23).

- December 1, 2015 letter denying coverage due to failure to provide, inter alia, call detail for home phone, bank records for Jeep Federal Credit Union and an account at Huntington National bank, and financial records for the Bolton Adult Family Home. (Doc. 24-24).

Plaintiffs do not dispute that they received these letters, and do not dispute Johnson's claims that Plaintiffs did not provide the requested documentation in response. Nor do they argue that the requests for documentation were unreasonable. The fire occurred on January 1, 2015. Defendant began requested documentation in March 2015, and continued those requests through November 2015 (eight months). Similarly to the plaintiff in *Joseph v. State Farm Fire & Casualty Co.*, "Plaintiff cites no authority which would require State Farm to keep its investigation open

indefinitely in the hopes that plaintiff would eventually cooperate." 2013 WL 663623, at *4 (S.D. Ohio) (finding a failure to provide requested financial records over a period of six months a substantial and material breach of a cooperation clause); *see also Moore v. State Farm Fire & Cas. Co.*, 1985 WL 662876, at *1, *4 (Ohio Ct. App.) (finding a substantial and material breach of cooperation clause where plaintiffs failed to produce tax returns in a nine month period).

Plaintiffs instead attempt to draw a line between a "total lack of cooperation" or " blatant refusal" to cooperate and their admittedly partial cooperation in this case—arguing the first is a situation appropriate for summary judgment and the second presents a question of fact about cooperation. Such a distinction is not supported by the case law and courts have granted summary judgment in cases involving partial, or selective cooperation when the information not provided was material and substantial.

For example, in *Joseph*, a case of suspected arson, the defendant requested personal and business bank statements, tax returns, loans, and cell phone statements. 2013 WL 663623, at *4. The plaintiff provided some information, but not tax returns. *Id.* After correspondence between the parties' attorneys, the plaintiff ultimately stated the defendant's request to examine plaintiff's business records was unreasonable because the documents already provided showed plaintiff was mostly current on his financial obligations. *Id.* at 5. In letters, the defendant also warned plaintiff that failure to provide the requested records could be considered a failure to cooperate, which would be a basis for denial of the claim. *Id.* at 5-6. After the denial, the plaintiff filed suit, arguing the requested records were not relevant to the defendant's investigation. *Id.* at 7. The court noted that because an insured's financial condition is relevant to a determination of possible motive for arson, the requested documents were, in fact, relevant. *Id.* Thus, "Plaintiff's failure to provide the

requested financial documents resulted in a failure to satisfy a condition precedent to State Farm's obligation to pay his claim." *Id.* at 8. The court explained:

> The fire occurred on August 18, 2010. From mid-September, 2010, through mid-March 2011, a sixmonth [sic] period, State Farm unsuccessfully made repeated attempts to make arrangements for its accountant to review plaintiff's financial records, and attempted to accommodate plaintiff's busy schedule. Although plaintiff claimed that he could make his records available on May 2, 2011, there is no evidence that he made any further efforts to tender his records between Ryan's letter of March 16, 2011, and State Farm's letter of June 7, 2011, which voided the policy roughly ten months after the fire. Plaintiff cites no authority which would require State Farm to keep its investigation open indefinitely in the hopes that plaintiff would eventually cooperate. *Compare Moore*, 1985 WL 62876, at *1, 4 (finding a substantial and material breach of policy's cooperation clause where plaintiffs failed to produce tax returns in the ninemonth [sic] period between the fire and the filing of plaintiffs' action).

*Id.* at *8.

On appeal, the plaintiff argued "the district court improperly granted summary judgment on his breach of contract claim because there were genuine issues of material fact concerning whether he had *sufficiently complied* with State Farm's request for financial documents". *Joseph v. State Farm Fire & Casualty Co.*, No. 13-3395, at 2 (6th Cir. 2013) (emphasis added). The Sixth Circuit affirmed the district court's decision, holding that "[b]ased on the undisputed fact that Joseph failed to provide State Farm with *all of the pertinent financial information that had been requested*, the district court properly determined that he had violated the cooperation clause of his insurance policy and that State Farm was entitled to summary judgment." *Id.* at 2 (emphasis added). The court emphasized that "the district court decided the issue of whether he violated the cooperation clause based on undisputed facts" including: 1) that the investigation revealed the fire was caused by arson; 2) plaintiff had some financial difficulties, revealing that he may have had a motive to start the fire; and 3) that plaintiff had not provided certain business and personal financial records despite numerous requests. *Id.* at 3-4. Similar to the plaintiff in *Joseph*, in this case,

Plaintiffs failed to provide Defendant "with all of the pertinent information that had been requested." *Id.* at 2.

Other cases have similarly found such partial cooperation insufficient to survive summary judgment. *See Johnson v. Allstate Ins. Co.*, 2002 WL 31862234, at *6-8 (Ohio Ct. App.) (finding plaintiff's "partial[] compli[ance]" insufficient to survive summary judgment where plaintiff testified about her financial status, but did not provide requested documents to verify that information, and where plaintiff failed to provide the insurance company an opportunity to inspect items allegedly damaged in an explosion); *Doerr v. Allstate Ins. Co.*, 121 F. App'x 638, 640 (6th Cir. 2005) ("Undoubtedly, Doerr complied with certain aspect of the policy. But this does not create an issue of fact because he clearly did not comply with all of the conditions of the policy, specifically, the requirement that he produce documents and records reasonably requested by Allstate"); *Gaston*, 2008 WL 5716525, at *4 ("Allstate set a reasonable deadline for compliance with its requests, provided Plaintiff ample opportunity to respond, and yet received nothing.").

These cases do not distinguish between a blatant or overt refusal to provide information and a simple failure to provide. Either situation presents a lack of compliance with a clause, as is present here, that requires a claimant to "as often as we reasonably require . . . provide us with records and documents we request and permit us to make copies." (Policy, Doc. 24-3, at 7). Whether this is an outright refusal, or a mere avoidance of responsibility does not make a difference. Were the Court to draw the line Plaintiffs suggest, a policyholder could overcome summary judgment on a cooperation clause issue by simply remaining silent, rather than expressing a refusal to produce documents.

Plaintiffs also attempt to distinguish *Gabor* and *Doerr* because the plaintiffs in those cases acknowledged they had documentation but refused to turn it over to the insurance companies.

(Doc. 27, at 14). Although the Court recognizes Plaintiffs are not able to turn over certain tax returns (2014 and 2015 personal returns and 2013-2015 returns for the Bolton Group Home) because those returns have not yet been prepared, this argument does not hold for the other documentation requested. Plaintiffs have provided no explanation for why they have not (or are unable) to turn over complete bank records, credit card statements, landline telephone records, or other financial information regarding the group home for the relevant time period.[5]

Plaintiff also emphasize that they cooperated with other policy provisions, including submitting to a recorded statement, examinations under oath, and facilitating the taking of examinations under oath of the Property's tenants, Davis and Armstrong. *See* Doc. 27, at 8, 11 ("They provided several statements, including recorded statements, examinations under oath, and deposition testimony. As well, they provided a variety of documents all at the requests [sic] of State Farm."). However, compliance with some conditions is not the same as compliance with all conditions. *See Doerr*, 171 F. App'x at 640-41 ("compliance with some of the policy's conditions precedent does not excuse failure to comply with all of the conditions precedent") (citing *Walker v. Buck*, 81 Ohio App. 3d 846 (1993) ("A party claiming insurance coverage has the burden of establishing compliance with all provisions of the insurance policy which are precedent to his right to recover") (internal quotation omitted). Submitting to an examination under oath and securing the attendance of witnesses are separate provisions under the Policy, *see* Policy, Doc. 24-3, at 7, 10, independent of the duty to provide Defendant "with records and documents we request and permit us to make copies", *id.* at 7.[6]

---

5. Although Earnest Bolton avers he had very little debt at the time of the fire, as in *Johnson*, "[t]he problem was that, without documentation, [his] claim of no financial distress was not verifiable." 2002 WL 31862234, at *6.
6. Additionally, while Plaintiffs cite *Savage v. American Family Insurance Company*, 178 Ohio App. 3d 154 (2008), for the proposition that good faith participation in the discovery process

The undersigned therefore concludes failure to provide the documents at issue was a material and substantial breach of the cooperation clause. Plaintiffs admit the landline telephone at Welsford Court was used on the date of the Fire, *see* Doc. 28-3, at 7 (response to interrogatory number eight). And Plaintiffs do not dispute they have not provided the call detail records to Defendant. Landline telephone records are relevant to determine Plaintiffs' alibi and for Defendant to investigate Plaintiffs' contacts around the time of the fire. *See Doerr*, 171 F. App'x at 641

---

during litigation may satisfy policy conditions. *See* Doc. 27, at 15; *Savage*, 178 Ohio App. 3d at 161 ("it would appear that plaintiffs' good faith participation in discovery during this lawsuit may have satisfied the conditions precedent contained in the insurance policy") (quoting a trial court order). *Savage* is, however distinguishable from the case here in two ways. First, in that case, the insurer had not denied coverage and was still, during the lawsuit, "ready, willing, and able to reconsider the . . . claim if the requested materials were provided". *Id.* By contrast, here, coverage has already been denied. And second, even during the pendency of this lawsuit, it is undisputed Plaintiffs have still not provided complete bank statements, landline telephone records, and credit card statements. In fact, in responses to interrogatories, Plaintiffs' repeatedly stated "Plaintiff's [sic] are continuing to gather additional documentation and will provide same to Defendant in a timely manner. Plaintiffs understand they are under a continuing duty to disclose this information." *See* Doc. 28-3. This response was included in Plaintiffs' response to questions regarding who attended the New Years' Eve party at Welsford Court, and questions regarding monthly statements for credit and bank cards. For example, in response to an interrogatory requesting any and all monthly bank statements for the past three years, Plaintiffs responded:

> Documents of some bank statements covered by this request have previously been provided to prior counsel, they are being re-provided herewith, as well, Plaintiff's [sic] are continuing to gather additional documentation and will provide same to Defendant in a timely manner. Plaintiffs understand they are under continuing duty to disclose this information.

(Doc. 28-3, at 18). And, in response to an interrogatory requesting landline telephone statements for Welsford Court and the Bolton Adult Family Home, Plaintiffs stated: "Documents previously provided to Counsel on March 14, 2016 re-provided herewith for further review." *Id.* Plaintiffs have not produced or pointed to any record showing they have provided landline telephone call detail.

(noting plaintiff's "cellular phone records are also arguably relevant to determining his whereabouts and contacts around the time of the fire").

Similarly, Plaintiffs do not dispute they have not produced a Capital One credit card statement covering the date of the fire. Plaintiffs have produced statements for the month before and month after, but not the month of the fire. *See* Doc. 28-2, at 53-54 (statements covering November 23-December 22, 2014 and January 23-February 22, 2015). This request is reasonably relevant for Defendant to determine Plaintiffs' financial situation (going to motive) or whether Plaintiffs purchased any materials that could have been used to set the fire.

Moreover, while Plaintiffs have produced selective bank records, they do not dispute they have not produced complete copies as requested by Defendant. *See* Doc. 28-1, at 1-14 (Jeep Country Federal Credit Union statements for one account for January, February, June, and December 2014, and statements for another account for January, February, and June 2014). Such bank records are reasonably necessary to Defendant's investigation into motive for an arson. *See Doerr*, 121 F. App'x at 641 (explaining "[i]ncome tax forms and bank records are relevant documentary evidence demonstrating an insured's financial condition"). Due to Plaintiffs' failure to produce these records, Defendant was unable to determine motive or alibi.

Finally, Plaintiffs have not provided complete financial records for the Bolton Adult Family Home, "including any ledger statements, bills, accounts, or any tax-related information." (Doc. 29, at 2). Plaintiffs have produced some miscellaneous documentation for the Bolton Adult Family Home, *see* Doc. 28, at 33 (1099MISC for 2013), Doc. 28-1, at 15 (Firelands Regional Medical Center payment to Earnest Bolton); Doc. 28-1, at 16-19 (records of three monthly payments, license to operate, and quarterly report showing four residents), and explained that their tax returns for tax years 2013 through 2015 have not been filed, *see* Bolton Aff., Doc. 27-1, at 2.

But this miscellaneous documentation does not provide a full picture of the financial viability of the business. The documents requested were relevant to Defendant's investigation into motive and opportunity to commit arson. *See Gabor*, 66 Ohio App. 3d at 144-45 ("where, as here, the insurance company raises as an arson as an affirmative defense to liability, there are strong public policy considerations supporting the admission of evidence of the insured's financial position to show a possible motive for the incendiarism").

Plaintiffs argue Defendant was not prejudiced by their incomplete financial disclosures, because Plaintiffs were, in May 2014, granted a bankruptcy discharge, and had very little debt from any source at the time of the Fire. *See* Doc. 27, at 10, 13; Bolton Aff., Doc. 27-1, at 3. While the bankruptcy proceeding and discharge are certainly relevant sources of information, they do not explain Plaintiffs' complete financial situation seven months later, at the time of the fire. Additionally, the bankruptcy discharge does not speak to Plaintiffs opportunity (or non-opportunity) to start or procure the fire. The requested bank records, credit card statements, and financial information about the Bolton Adult Family Home are still relevant to Defendant's investigation. And the "portion of tax documents" (Doc. 27, at 3) Plaintiffs provided are not sufficient to show "a picture of the insured's entire financial situation". *Gabor*, 66 Ohio App. 3d at 145 (citing *Moore*, 1985 WL 62876) for the proposition that failure to supply tax records, which show an insured's overall financial situation, constitutes a substantial and material breach of a cooperation as a matter of law).

Thus, the undersigned concludes, based on the undisputed facts, Plaintiffs' failure to provide the requested documentation—which would have shown Plaintiffs' financial situation at the time of the fire and Plaintiffs' opportunity (or non-opportunity) to start the fire—resulted in substantial and material prejudice to Defendant. *See Gabor*, 66 Ohio App. 3d at 145 (refusal to

produce income tax returns "was a substantial and material breach of his contractual duty to cooperate which clearly prejudiced the insurer's investigation into possible motives for arson"), *Doerr*, 121 F. App'x at 641 (holding that as a matter of law, failure to turn over financial information—tax returns and bank records—as well as cell phone information, resulted in material prejudice to the defendant), *Gaston*, 2008 WL 5716525, at *3-4 (because insurer reasonably suspected arson, insured's failure to produce income tax returns and bank records in violation of cooperation clause resulted in material and substantial prejudice to insurer as a matter of law).

In light of the above, the undersigned concludes there is no genuine issue of material fact that Plaintiffs failed to cooperate pursuant to the terms of the Policy. And Defendant has shown such a failure to cooperate resulted in substantial and material prejudice to its ability to investigate the claim. Due to Plaintiffs' failure to turn over relevant records, Defendant was unable to complete a full investigation motive, alibi, or any other aspect of Plaintiffs' involvement (or non-involvement) in the fire. Without the requested documentary evidence, Defendant was unable to determine the truth or falsity of Plaintiffs' claims. In short, Defendant was unable to complete a full and fair investigation of the arson. Accordingly, Plaintiffs' refusal to produce the requested records was a breach of their duty to cooperate and materially prejudiced Defendant's investigation.

Bad Faith

Defendant argues it is entitled to summary judgment on Plaintiffs' bad faith claim for two independent reasons: 1) if there is no coverage, there can be no bad faith; and 2) at the very least, Defendant was "reasonably justified" in denying the claim. (Doc. 24-1, at 21-23).

In Ohio, "an insurer has a duty to act in good faith in the processing and payment of the claims of its insured." *Staff Builders, Inc v. Armstrong*, 37 Ohio St. 3d 298, 302 (1988) "[A]n

insurer fails to act in good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 554 (1994). In this case, Defendant was justified in denying Plaintiffs' claim because, as explained above, Plaintiffs materially breached the Policy's cooperation requirement. And, "[w]here a policy does not cover a claim, it cannot be bad faith to refuse to cover it." *Taylor v. State Farm Fire & Cas. Co.*, 2012 WL 1643877, *4 (N.D. Ohio) (citing *Pasco v. State Auto. Mut. Ins. Co.*, 1999 WL 1221633, *5-6 (Ohio Ct. App.)); *see also Gaston*, 2008 WL 5716525, at *5 (granting summary judgment on bad faith claim after finding defendant entitled to summary judgment on coverage claim due to breach of cooperation clause). Accordingly, Defendant is entitled to summary judgment on Plaintiffs' bad faith claim.

Violation of Ohio Insurance Statutes

Plaintiffs' Fifth Cause of Action alleges: "Defendant has engaged in unfair trade practices, including Defendant's failure to properly settle Plaintiffs' claim." (Doc. 1-1, at 13).

Defendant contends Plaintiff's unfair trade practices claim fails as a matter of law because: 1) there is no private right of action in Ohio for violation of insurance statutes or regulations; and 2) the Ohio Consumer Sales Practices Act has no application to controversies involving insurance policies. (Doc. 24-1, at 19-20). Plaintiffs concede there is no private right of action under Ohio insurance statutes and regulations, but contend "it is still helpful and instructive to fully analyze this case to apply the spirit of these Code Sections [sic], by analogy." (Doc. 27, at 4). For the reasons discussed below, the Court finds Defendant is entitled to summary judgment on the unfair trade practices claim.

Ohio courts have specifically rejected Plaintiffs' argument that the insurance statutes and regulations can be applied by analogy. *See Furr v. State Farm Mut. Auto. Ins. Co.*, 128 Ohio App.

3d 607, 616 (1998) (Ohio Administrative Code does not create a private right of action, and should not be considered as evidence as bad faith); *Griffith v. Buckeye Union Ins. Co.*, 1987 WL 17805, at *6 (Ohio Ct. App.) ("The Ohio Department of Insurance rules, however, do not create a private cause of action, but are regulatory in nature. Thus, the rules cannot be considered evidence of the applicable standard of bad faith."); *see also Price v. Dillon*, 2008 WL 698944, at *5 (Ohio Ct. App.) (citing *Furr* & *Griffith*, and explaining: "Instead of applying to a private cause of action, the Administrative Rule is relevant in determining whether an insurance provider is guilty of an unfair claims practice in an action between the State of Ohio, Department of Insurance and the insurance provider.")

Thus, the undersigned concludes Defendant is entitled to summary judgment on Plaintiffs' unfair trade practices claim.[7]

## CONCLUSION

Upon review of the evidence and arguments, the Court finds there are no genuine issues of material fact and Defendant is entitled to summary judgment as a matter of law. Defendant's Motion for Summary Judgment (Doc. 24) is granted and the case is dismissed with prejudice.

IT IS SO ORDERED.

 s/James R. Knepp II
United States Magistrate Judge

---

7. In response to summary judgment, Plaintiffs present no other basis for this claim than arguing the insurance code sections are "helpful and appropriate in determining how an insurance company is expected to conduct business within the State of Ohio.". *See* Doc. 27, at 7